**IN THE COURT OF APPEALS OF IOWA**

No. 22-0628
Filed June 15, 2022

**IN THE INTEREST OF S.A.,**
**Minor Child,**

**E.A., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

District Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Melissa A. Nine of Nine Law Office, Marshalltown, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Mary Cowdrey of Marshalltown Public Defender's Office, Marshalltown,

attorney and guardian ad litem for minor child.


        Considered by Bower, C.J., Schumacher, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. We review termination proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

S.A. was born in October 2020, was adjudicated a child in need of assistance (CINA) on December 17, and at the time of the December 9, 2021 termination hearing, had been out of his mother's custody for thirteen months.

S.A. was removed from the mother's custody shortly after birth; the child's umbilical cord tested positive for methamphetamine. The mother's hair stat test, which was conducted soon after, also tested positive for methamphetamine. The mother denied using methamphetamine and suggested a false positive may be due to her prescription blood pressure medication. The laboratory ruled out any false positive.

The mother has continued to deny usage and refused to provide another hair stat throughout the proceedings. This refusal continued despite the court's explicit caution to appear for testing on August 2, 2021. In addition to failing to comply with drug testing, the mother minimally participated in substance-abuse and mental-health services. Providers discontinued services due to the mother's sporadic attendance.

The juvenile court entered a twenty-four page, single-spaced order with a comprehensive review of the history of the juvenile court proceedings and detailed findings and conclusions. The court determined the child could not safely be returned to the mother's care and termination of the mother's parental rights is in the child's best interests. The mother appeals.

Under Iowa Code section 232.116(1)(h) (2021), a parent's rights may be terminated if the court finds: (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of their parent for six of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody at the present time. "[A]t the present time" means at the time of the termination hearing. *D.W.,* 791 N.W.2d at 707.

On appeal, the mother challenges only the court's finding that the child could not be returned to her at the present time. The mother asserts there is no evidence she uses methamphetamine and thus her substance-abuse problem is "purely speculative." She argues service providers note her appropriate parenting skills during her supervised visits and no one testified she displayed any outward signs of being under the influence. She also contends the case plan "failed to clearly and objectively identify what specifically it was that [the mother] was to accomplish and by when."

The record belies the mother's contention she did not know what was expected of her for reunification with her child.[1] The mother failed to test or refused

---

[1] At the July 23, 2021 permanency hearing, the court spoke directly to the mother:

testing on more than twenty occasions—all of which we presume would have been positive for illegal substances.[2] *See In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021) (citing cases). "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *Id.* (citation omitted).

In addition, we agree with the juvenile court that the mother's minimal participation in substance-abuse testing, substance-abuse treatment, and mental-health treatment make it impossible to verify whether she is refraining from using illegal substances and is mentally stable to resume fulltime parenting. As the juvenile court so aptly stated, "Lacking such verification, the court must respect the statutory concern for [S.A.]'s safety." Clear and convincing evidence supports termination under Iowa Code section 232.116(1)(h).

The mother contends that even if a ground for termination has been established, termination of her parental rights is not in the child's best interests. The mother asserts "the primary concern" here was her "failure to complete court-

---

I don't know, whatever the excuses are, or explanations are as to why you are not going to [the substance-abuse treatment program], why you are not testing, I don't know what it is, but those are the expectations, proof that I need and everybody else needs here to believe that, okay, you are in good shape to resume parenting. . . .

The way that [S.A.] can be with family is for you to dive headlong into cooperation with what DHS is expecting from you as far as drug testing, as far as mental health testing, as far as visiting, as far as being accessible to be evaluated.

In the termination order, the court pointed out that its prior orders authorized DHS to drug test and required the mother to cooperate with substance-abuse testing and treatment and to "fully and timely participate in all recommended mental health treatment and counseling." The court also describes the mother's inadequate response to all the requirements.

[2] The mother provided two negative urinalyses. The court noted a urinalysis "was a limited snapshot capable of detecting drug use over the past [forty-eight] hours. Such a test did not offer a long term ([three] months) picture of drug use that a hair stat test could deliver."

ordered requirements." But it is clear the juvenile court's focus was the best interests of the child and the mother's inability or unwillingness to place the child's needs before her own. S.A. has already waited for more than the statutory six-month time limit. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). "[G]iv[ing] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," we conclude it is in the S.A.'s best interests to terminate the mother's parental rights so the child can be permanently placed. *See* Iowa Code § 232.116(2).

Because a ground for termination of parental rights exists and termination is in the child's best interests, we affirm.

**AFFIRMED.**